

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 8, 2020

**VIA ECF AND EMAIL**

The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

> Re:  *United States v. Javian Moore,* **20 Cr. 563 (JPO)**; *United States v. Kevin Lewis*, **20 Cr. 563 (JPO)**

Dear Judge Oetken:

    The Government respectfully submits this letter regarding a potential conflict of interest faced by counsel for defendant Javian Moore, a/k/a "Julio" ("Moore").  On October 28, 2020, a grand jury returned an indictment charging Moore and his co-defendant, Kevin Lewis, a/k/a "Mula" ("Lewis"),[1] for violations of 18 U.S.C. §§ 371 (theft of government property), 1349 (bank fraud conspiracy), and 1028A (aggravated identity theft). Both Moore and Lewis were arrested on October 28, 2020.  Moore was initially appointed CJA counsel but later retained Andre Travieso, Esq. Mr. Travieso previously represented Moore's co-defendant, Lewis, in connection with charges in New Jersey arising out of the same scheme charged here.

    As detailed in the Indictment, and relevant to the *Curcio* issues raised herein, in furtherance of the scheme charged in Count One, members of the conspiracy obtained blank stolen postal money orders, occasionally still in the shrink-wrapped blocks containing 100 postal money orders. Members of the conspiracy then altered and cashed the altered stolen money orders at banks and post offices, using their own names and identification, the names of third parties, or fake names.

    Prior to the Indictment in the instant case, on or about May 31, 2019, Lewis was arrested by law enforcement in Tenafly, New Jersey, after police responded to a report of a woman ("CC-1") attempting to cash a stolen money order.  Officers encountered Lewis after CC-1 explained that Lewis and another individual ("CC-2") had dropped her off at the post office and were waiting for her in a nearby car.  Law enforcement officers arrested Lewis, CC-1, and CC-2 and, after obtaining a judicially authorized warrant, searched the vehicle.  The search yielded, among other things, four stolen postal money orders and two postal money order receipts. The Bergen County Prosecutor's Office charged Lewis by complaint with four violations of New Jersey state law (hereinafter the "New Jersey Case"), including N.J.S. 2C:21-1C, for his possession of stolen U.S. Postal Money

---

[1]  Nineteen total defendants were charged by indictment and arrested in this case.

Orders. *See* Exhibit A, *State v. Lewis*, Complaint S-2019-33-0261. In light of the federal investigation into the scheme charged in Count One, the Bergen County Prosecutor's Office administratively dismissed the case against Lewis in early 2020. Lewis was represented by Andre Travieso, Esq. in the New Jersey Case. Lewis is no longer represented by Mr. Travieso is any capacity. After conversations with Lewis's current counsel, Ezra Spilke, Esq., it is the Government's understanding that no confidential information was communicated to Mr. Travieso during his brief representation of Lewis. It is the Government's further understanding that Lewis has consulted with Mr. Spilke at length about the potential conflict created by Mr. Travieso's current representation of Moore.

Because Moore and Lewis are co-defendants in the present case and Mr. Travieso currently represents Moore and previously represented Lewis in a substantially related matter, Mr. Travieso faces a conflict of interest. The parties have conferred and believe that the conflict is waivable but that a *Curcio* hearing is necessary with respect to Moore. The Government respectfully attaches a proposed line of inquiry for Moore in connection with the *Curcio* hearing (Attachment A).

Given the nature of Mr. Travieso's former representation of Mr. Lewis, the parties believe that Mr. Lewis may waive any potential conflict through his current counsel, Ezra Spilke, Esq. *See United States v. Oberoi*, 331 F.3d 44, 50 (2d Cir. 2003). However, the Government has attached a proposed line of inquiry for Lewis should the Court conclude that an in-person hearing is also required with respect to Mr. Travieso's former representation of Lewis (Attachment B).

## **Applicable Law**

A defendant has a right under the Sixth Amendment to conflict-free legal representation. *See United States v. Levy*, 25 F.3d 146, 152 (2d Cir. 1994); *United States v. Schwarz*, 283 F.3d 76, 90-97 (2d Cir. 2002). While the Sixth Amendment encompasses a defendant's right to be represented by the attorney of his choice, the essential aim of the Sixth Amendment's right to counsel is to ensure an effective advocate for all criminal defendants. *Wheat v. United States*, 486 U.S. 153, 159 (1988). When a court has been informed of the possibility of a defense counsel's conflict of interest, it has a threshold obligation "to investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *Levy*, 25 F.3d at 153; *see also United States v. Kliti*, 156 F.3d 150, 153 (2d Cir. 1998). As the Second Circuit has held in connection with *Curcio* hearings:

> The trial court has an obligation to inquire into the facts and circumstances of an attorney's interests either in response to a timely conflict of interest objection or when it knows or reasonably should know of the possibility of a conflict of interest. Failure to engage in such an inquiry, when it is required, results in an automatic reversal. An inquiry allows the trial judge to determine the precise nature of the conflict and how to proceed, *i.e.*, whether to disqualify counsel, obtain a waiver from the defendant pursuant to *Curcio*, or take no action.

*United States v. Stantini*, 85 F.3d 9, 13 (2d Cir. 1996) (citations and internal quotation marks omitted). *See also United States v. Rahman*, 189 F.3d 88, 143 (2d Cir. 1999) (discussing the

"Court's obligation to inquire concerning a counsel's conflict of interest"); *Kliti*, 156 F.3d 150, 153 (discussing court's "threshold obligation to determine whether the attorney has an actual conflict, a potential conflict, or no conflict . . . [and] obligation to inquire into the conflict of interest"). If the court determines that defense counsel has an actual or potential conflict, the court has a "'disqualification/waiver' obligation" to determine whether the conflict is so severe as to obligate the Court to disqualify the attorney or a lesser conflict that can be waived in a *Curcio* hearing. *Kliti*, 156 F.3d at 153; *Levy*, 25 F.3d at 153.

An actual conflict is one that is so "severe" that "no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation . . . ." *Levy*, 25 F.3d at 153 (citing *United States v. Fulton*, 5 F.3d 605, 612-14 (2d Cir. 1993)). An actual conflict exists "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004) (internal quotation marks and citations omitted). Where a conflict of interest is actual, a court is "obliged" to disqualify the attorney. *Levy*, 25 F.3d at 153. A potential conflict of interest, by contrast, is a "lesser" conflict. *Id.* A potential conflict exists where a court finds that "a rational defendant could knowingly and intelligently desire the conflicted lawyer's representation . . . ." *Id.*

Regardless of the severity of the conflict, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160. "The question of [attorney] disqualification therefore implicates not only the Sixth Amendment right to the accused, but also the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial." *United States v. Locascio*, 6 F.3d 924, 931 (2d Cir. 1993). Accordingly, a court "should decline to permit a defendant to be represented by the counsel of his choice if that representation would undermine the integrity of the judicial process." *United States v. DiPietro*, No. 02 CR 1237 (SWK), 2004 WL 613073, at *4 (S.D.N.Y. Mar. 29, 2004) (citing *Wheat*, 486 U.S. at 163).

If a court determines that there exists a conflict that does not require disqualification, it "must conduct a *Curcio* hearing to determine whether the defendant will knowingly and intelligently waive his right to conflict-free representation." *Kliti*, 156 F.3d at 153; *Levy*, 25 F.3d at 153. The Second Circuit has set forth the requirements for such a *Curcio* hearing in great detail:

> At such a hearing, the trial court (1) advises the defendant of his right to representation by an attorney who has no conflict of interest, (2) instructs the defendant as to the dangers arising from particular conflicts, (3) permits the defendant to confer with his chosen counsel, (4) encourages the defendant to seek advice from independent counsel, (5) allows a reasonable time for the defendant to make a decision, and (6) determines, preferably by means of questions that are likely to be answered in narrative form, whether the defendant understands the risk of representation by his present counsel and freely chooses to run them.

*United States v. Perez*, 325 F.3d 115, 119 (2d Cir. 2003).

## Discussion

Mr. Travieso's representation of Moore following his prior representation of co-defendant Lewis in a substantially related matter presents a potential conflict of interest. If either defendant decides to cooperate, the cooperating defendant may be called to testify against his co-defendant at a trial or other proceeding in this matter. Mr. Travieso's ability to defend Moore, including his ability to cross examine Lewis, should Lewis cooperate, may be hampered by Mr. Travieso's obligations to his former client.

It is the Government's understanding that Mr. Travieso's representation of Lewis in the New Jersey Case was relatively brief and cursory. Attorneys from the Bergen County Prosecutor's Office have informed the Government that the New Jersey Case was administratively dismissed before any significant proceedings occurred and that the case is now considered closed.

The Second Circuit has held that "lesser conflicts, such as an attorney's representation of two or more defendants or his prior representation of a trial witness, are generally waivable." *United States v. Perez*, 325 F.3d 115, 127 (2d Cir. 2003); *see also United States v. Cunningham*, 672 F.2d 1064, 1073 (2d Cir. 1982) (reversing the district court's decision to disqualify trial counsel who had previously represented a witness, holding that the district court could take appropriate steps, including limiting cross examination to matters of public record, to protect the interests of the attorney's former client). "Although such a conflict might require a defendant to abandon a particular defense or line of questioning, he can be advised as to what he must forgo; he 'can then seek the legal advice of independent counsel and make an informed judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel.'" *Perez*, 325 F.3d at 127 (*quoting U.S. v. Fulton*, 5 F.3d, 605, 613 (2d Cir. 1993).

Accordingly, to the extent there is any potential conflict arising from Mr. Travieso's prior representation of Lewis, it falls into the category of conflicts that are "generally waivable" by a defendant at a *Curcio* hearing. *United States v. Fan*, 26 F.3d 240, 248-49 (2d Cir. 1994) (attorney's representation of co-defendants who both proceeded to trial was generally waivable after both defendants' knowing and intelligent waiver of any potential conflict of interest).

### Conclusion

For the reasons stated above, the Government respectfully submits that the Court schedule a hearing pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982) and Federal Rule of Criminal Procedure 44(c). It is the Government's belief that, given the nature of the questioning to take place and pursuant to Rule of Criminal Procedure 43, the hearing must be held in person.[2] Enclosed please find proposed questions that the Government respectfully submits should be addressed at the in-person hearing.

Respectfully Submitted,

AUDREY STRAUSS
Acting United States Attorney

by: _____
Emily A. Johnson/Kaylan E. Lasky/
Ashley C. Nicolas
Assistant United States Attorneys
(212) 637-2409/-2351/2467

Cc: Andre Travieso, Esq. (by ECF)

Ezra Spike, Esq. (by ECF)

> An in-person *Curcio* hearing in this matter is hereby scheduled for February 26, 2021, at 12:00 p.m. Counsel for Mr. Moore is directed to assist him in consulting with a conflict attorney who shall also appear at the hearing.
> So ordered.
> December 21, 2020

_____
J. PAUL OETKEN
United States District Judge

---

[2] The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") does not include *Curcio* hearings among the types of proceedings that may be conducted remotely.